**Matter of Cartwright v Kennedy**

2024 NY Slip Op 32857(U)

August 13, 2024

Supreme Court, Albany County

Docket Number: Index No. 906349-24

Judge: Christina L. Ryba

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

INDEX NO. 906349-24

RECEIVED NYSCEF: 08/13/2024

STATE OF NEW YORK
SUPREME COURT    COUNTY OF ALBANY

_____

In the Matter of the Application of CAROLINE
CARTWRIGHT, MATTHEW NELSON, JOSEPH R.
RHONE, JR., and ALEXANDER PEASE,

                Petitioners,

    -against-

ROBERT F. KENNEDY, JR., NICOLE SHANAHAN,
DONNA L HARRIS, DAWN M. D'ARCANGELO,
ROSS W. ELAKMAN, ALAN S. GOMPERS,
LISA B. JACQUES, KEVIN J. MADONNA,
VICTORIA E. MADONNA, PHILIP J. MARESCO,
JENSUH Y. MCCORMACK, JAVIER EDUARDO
MERIZALDE, JENNIFER MEYERSON, KENNETH
A. NOGA, MARY C. O'DONNELL, GINA M. KRAUSE,
VALENTIN PARKS JR., NANCY V. PIERRO,
TERESA E. POLSKY, VARIN D. SAWH, LAWRENCE
P. SCHNAPF, CELESTE L. SHEAR, JEHANZEB SYED,
EILEEN S. TEPPER, BRUCE T. THORNE, LITA L.
THORNE, JOSHUA VOGEL, KRISTIN ANN MARIE
WHITE, KELLY A. ZANETO and SUSAN PETERS,

                Respondents-Candidates,

    -and-

HENRY T. BERGER, PETER S. KOSINSKI, ESSMA
BAGNUOLA and ANTHONYJ. CASALE, Commissioners
constituting the New York State Board of Elections.

                Respondents.

_____

*Corrected*

**DECISION/JUDGMENT**
**Index No.  906349-24**

APPEARANCES:

Howard E. Colton, Esq
Law Office of Howard E. Colton, Esq.
For Petitioners
53 East Merrick Road, Suite 237
Freeport, New York 11520

Keith Corbet, Esq.
Harris Beach, PLLC
For Petitioners
333 Earle Ovington Blvd, Suite 901
Uniondale, New York 11553

John C. Quinn, Esq.
Kaplan, Hecker & Fink LLP
For Petitioners- Objectors
350 Fifth Avenue, 63rd Floor
NewYork, NewYork 10118

New York State Board of Elections
For Respondents
40 North Peal Street, Suite 5
Albany, New York 12207

Gary L. Donoyon, Esq.
The Law Office of Gary L. Donoyon
For Respondents-Candidates
565 Plandome Road, #209
Manhasset, New York 11030

RYBA, J.,

The underlying facts and procedural history relevant to this Election Law § 16-102 proceeding are fully detailed in the Court's prior decision dated July 23, 2024 and will not be repeated herein except as necessary for clarification. Briefly, petitioners commenced this proceeding to invalidate an independent nominating petition filed with the New York State Board of Elections seeking to place respondents Robert F. Kennedy, Jr. and Nicole Shanahan on the official statewide ballot as candidates of the "We The People" independent body for the respective public offices of President and Vice President of the United States in the November 5, 2024 general election. While the verified petition asserts challenges to a wide array of alleged defects in the nominating petition, petitioners have since narrowed the original issues presented for the Court's determination to the sole and limited question of whether the address that Kennedy listed on the nominating petition as his "place of residence", i.e., 84 Croton Lake Road, Katonah, New York, is his true place of residence within the meaning of Election Law § 1-104 (22). Upon denying respondents' pre-answer motion to dismiss this proceeding and petitioners' cross motion for a summary determination in their favor, the Court scheduled a bench trial on the limited issue of Kennedy's residence to commence on August 5, 2024.[1]

Kennedy thereafter served an answer to the verified petition in which he raised various defenses, including but not limited to the claim that he designated the 84 Croton Lake Road address as his place of residence on the nominating petition pursuant to the legal advice of Paul Rossi, Esq., senior counsel for ballot access on Kennedy's campaign, and the claim that the New York State

---

[1] The trial was initially scheduled to commence on July 29, 2024 but was adjourned to August 5, 2024 at the request of Kennedy's counsel.

2

Election Law is unconstitutional to the extent that it imposes residency requirements for candidates running for the offices of President and Vice-President of the United States beyond those set forth in the United States Constitution. Various pre-trial motions ensued, with Kennedy filing a motion in limine seeking an order 1) precluding petitioners from offering any evidence at trial relating the fact that he owns a residence in California and that his wife and other family members reside in that home; 2) limiting his waiver of the attorney-client privilege resulting from his advice-of-counsel defense to the narrow issue of legal advice given by Rossi with regard to using the 84 Croton Lake Road address as his place of residence on the nominating petition; and 3) precluding petitioners from introducing any evidence at trial in the form of news and media articles. Petitioners filed a cross motion in limine in which they opposed Kennedy's motion and sought an order precluding Kennedy from introducing any evidence regarding legal advice he received regarding the use of the 84 Croton Lake Road address as his place of residence on the nominating petition. Petitioners also filed a separate motion requesting that the Court issue subpoenas duces tecum directing Kennedy and Rossi to produce certain documents at trial relating to legal advice given as to the nominating petition and the place of residence listed therein. Finally, petitioners filed an Order to Show Cause seeking an adverse inference by virtue of Kennedy's failure to respond to their various discovery demands. The motions and cross-motions were made returnable on August 5, 2024, the first day of trial.

## TRIAL

### I. Motions in Limine

The morning of trial commenced with counsel offering oral argument on their respective motions. With regard to Kennedy's motion to limit his waiver of the attorney-client privilege, Kennedy's trial counsel argued that the waiver of the attorney-client privilege should be "limited

3

specifically to the advice he received regarding the use of the [84 Croton Lake Road] address on his nominating petition", which trial counsel described as "the only subject matter [Kennedy] has put at issue with regards to the advice of counsel". Trial counsel further cautioned against any attempts by opposing counsel to elicit testimony from Rossi that might "invade the attorney-client privilege beyond the scope of what's been put at issue". At the conclusion of oral argument, petitioners' counsel withdrew the Order to Show Cause for an adverse inference and the Court issued decisions from the bench as to the remaining motions. Prior to issuing its rulings, the Court set forth the applicable standard of residency under New York law as follows:

> According to Election Law § 1–104 (22) and New York State case law, a residence is that place where a person maintains a fixed, permanent, and principal home and to which he or she, wherever temporarily located, always intends to return. As used in the Election Law, the term 'residence' is synonymous with 'domicile'. Case law has also established that an individual having two residences may choose one to which she or he has legitimate, significant and continuing attachments as her or his residence for purposes of the Election Law. The crucial factor in determining whether a particular residence complies with the requirements of the Election Law is that the individual must manifest an intent to reside there, coupled with physical presence, without any aura of sham.

Given the residency standard to be applied under New York law, the Court denied Kennedy's motion to preclude evidence related to his California residence. With regard to the request for a blanket preclusion of evidence related to news and media articles, the Court reserved decision pending a case-by-case determination of admissibility when such evidence was introduced at trial. With regard to the motion to limit Kennedy's waiver of the attorney-client privilege to legal advice received regarding use of the 84 Croton Lake Road address as his place of residence on the nominating petition, the Court granted the motion and further directed that "[a]ny other legal advice of counsel outside the scope of this limitation will not be admitted into evidence as I find it to be prejudicial and

4

the prejudice of such testimony outweighs any probative value it may have". Finally, given the limitation imposed on Kennedy's waiver of the attorney-client privilege, the Court denied petitioners' motion for trial subpoenas duces tecum as overly broad and seeking production of documents outside the narrow scope of the residency issue to be tried. When the Court inquired as to whether counsel for either party wished to be heard on the Court's rulings, they expressly declined the opportunity.

## II. Stipulations, Witness Lists and Cheryl Hines:

In compliance with the Court's pre-trial letter order, the parties filed witness lists, motions in limine and exhibit lists prior to trial. Petitioners' witness list identified 11 people including Cheryl Hines (virtual). Respondent's list identified five witnesses. Notably, neither side filed disclosures regarding expert testimony. To accommodate certain witnesses' schedules, the parties stipulated and the Court agreed that witnesses could be called out of order. This resulted in some of Kennedy's witnesses being called before petitioners rested their case. Before the trial began, various exhibits were stipulated into evidence by counsel.

Prior to the trial, the Court determined that the format would be hybrid allowing some witnesses to testify virtually. Before petitioners began their case, various arguments were placed on the record regarding the testimony of Cheryl Hines, Kennedy's wife. To that end, Scott James Street, Esq. appeared virtually on behalf of Hines and argued that the Court lacked jurisdiction to require her testimony. Street argued, "Ms. Hines is not physically present in New York right now, so under the law, civil law, she cannot be compelled to appear for a trial based on a New York trial subpoena." He further asserted that the proper approach would be to serve Hines with a subpoena in California for a deposition to occur in California, "[t]hat way [Hines'] deposition could be used

5

[* 5]

if she was unavailable to testify in New York State." Petitioners countered by claiming that under "Election Law this is a special proceeding, the time frames are truncated, discovery is truncated, and there's an important issue." They further argued that "in residence challenged cases, quite often the spouse of the candidate being challenged appears and presents testimony." Petitioners further argued that "in most of the cases when a spouse appears, residency has been determined in the candidate's favor." The parties then indicated they were close to placing a stipulation on the record with regard to Hines but that the agreement broke down as to whether California was "*a*" residence or "*the*" residence of Hines. The Court then asked Street if his position related to his client's testimony would change if Hines were allowed to testify virtually, and he stated, "he would have to ask her about it." Street then reiterated that California Law needed to be complied with to compel Hines to testify. The Court reserved on petitioners' request to subpoena Hines' testimony. Notably, both sides ultimately rested without calling Hines to testify or requesting the Court to revisit the issue. Therefore, the Court makes no inferences regarding Hines in this matter. The testimony and evidence presented at trial and relied upon by the Court is summarized but not limited to the proof set forth below.

### III. Petitioner's Case:

#### 1. David Michaelis

Michaelis testified that he received a subpoena requiring his testimony. His testimony established that he has lived at 1 Twin Lakes Drive, in Bedford, NY since 2009 with his wife Nancy Ellen Steiner. Per his testimony, the home sits on five acres and is a "farmhouse with four bedrooms and a patio." According to Michaelis, he pays the regular expenses at the home. Michaelis testified he has known Kennedy since 1978 and they were "always good friends." With regard to Kennedy

6

staying at the 1 Twin Lakes Drive home, he testified that at a certain point there was a pattern where Kennedy would "stay over as [a] house guest when he was continuing work at Pace and at Riverkeepers." He testified that after Kennedy married Hines in 2014, he was "essentially in California, although obviously his travels take him all over the place." After 2014, Michaelis testified that as early as 2015 and "certainly in 2016" Kennedy would "come on Sunday nights and leave on Tuesday and go to work and then back to California." Michaelis testified that when Kennedy stayed he would "bring a briefcase, an overnight bag and very little." In between the visits, Michaelis testified that Kennedy did not leave anything behind, although once a rosary was left behind and was mailed to Kennedy at his California address. Michaelis testified that Kennedy never moved into his home nor did he ever pay rent or contribute to expenses.

According to Michaelis, in January 2017 the visits from Kennedy stopped and he could no longer recall Kennedy being a regular guest anymore. When directed to the statement in Kennedy's Affirmation that "upon [his] decision to contest the Democratic Party's 2024 nomination for the office of President of the United States, in March 2023, [his] friend and landlord David Michaelis requested that [he] move out of [his] residence at *Two* Twin Lakes *Road*, as he remains a supporter of President Biden", Michaelis testified that the statement wasn't truthful. He elaborated that he didn't speak to Kennedy in March 2023 and that the Twin Lakes address was not Kennedy's residence as he had not "lived there for six years." Furthermore he pointed out that the address or the house is *One* Twin Lakes *Drive*, not *Two* Twin Lakes *Road* which was stated in Kennedy's affirmation. With regard to possessions of Kennedy's moved from the Twin Lakes home to the 84 Croton Lake Road address, Michaelis testified that he "never saw any possessions of [Kennedy's] that would've had to be moved in the time frame that's being described, or frankly, ever." He further

7

testified that "[Kennedy] never moved into our house as a tenant; therefore, there were no amount of possessions other than that which he would bring with him to visit us as our guest and friend." He testified that the last time he saw Kennedy was in approximately 2019 when he was in California, which is 4 years prior to his candidacy for president. Nonetheless, Michaelis testified that he recently months he returned home from the gym to find a reporter in his driveway asking him questions about whether Kennedy lived in his Twin Lakes home.

On cross-examination by respondent's attorney, Michaelis admitted that Kennedy kept a van at his home during the time he would periodically stay there as a guest from 2014 to 2017. He also testified that Kennedy held Alcoholics Anonymous meetings at his home during the years he was a guest at the home. He also testified that Kennedy used the Twin Lakes address for his car registration and for his voter registration, even during years when he never stayed or returned to the home.

### 2. Nancy Steiner

Steiner's testimony established that she has lived at 1 Twin Lakes Drive since 2007 which was corroborated by the deed to the home. She further testified she has resided at 1 Twin Lakes Drive with her husband David Michaelis since 2009. Other than time spent in Maine, Steiner spends her time at 1 Twin Lakes Drive. She testified that she has known Kennedy for at least 33 years. She stated that recently her relationship with Kennedy had changed and she was unhappy about Kennedy representing to the press that her husband was his landlord, because "that's not accurate." She testified that Kennedy stayed at her 1 Twin Lakes Drive home over the years until 2017 and that he has never spent a night at the home since then. Steiner's testimony was consistent with Michaelis' testimony, namely that Kennedy never paid rent nor contributed to any expenses at the Twin Lakes

8

home. Similar to Michaelis' testimony, Steiner testified that the last time she saw Kennedy (before the present day) was in California in 2019.

With regard to Kennedy using her address recently, Steiner testified that she was upset when her house was referred to in the press because he was a "*guest*" in their home and she was never his "*landlord*." On cross-examination, Steiner admitted that she had met with petitioner's counsel to prepare for the hearing. In addition, certain text messages related to conversations between Steiner and Kennedy were stipulated into evidence. In these text messages, Kennedy apologized for referring to Michaelis as his landlord. Kennedy also stated in the text "your house was my official residence for my drivers license, voting etc until you asked me to leave."

### 3. Stephen Smith

Smith's testimony established that he lives in Cambridge, Massachusetts and has a home in Los Angeles, California. He testified that he is Kennedy's cousin and that they attended Harvard University together. He testified that he sees Kennedy once or twice a year in Los Angeles. He also testified that he saw Kennedy in Boston this year. He set forth that he wouldn't let his political differences with Kennedy impact his testimony and that he once visited Kennedy's home in California for dinner. Smith testified that he has not seen Kennedy in New York in five years. However on cross-examination, Smith testified that he doesn't spend time in Westchester County when visiting New York

### 4. Andrew Karsch

According to his testimony, Karsch has known Kennedy since 1971 or 1972 when they met in Cambridge where Karsch currently resides. Karsch testified that he moved back to Cambridge two and half years ago. Prior to that, he lived in Brooklyn Heights and Shelter Island in New York.

9

[* 9]

Most of Karsch's testimony referenced time spent with Kennedy and his family prior to 2014. When asked questions about his political views, he testified that despite having differing political views from Kennedy, that would not impact his ability to testify truthfully. He testified that the last time he saw Kennedy was at his home in California in 2022. He testified that the California home was "well lived in."

## 5. Charles Rohrer

Rohrer was subpoenaed by petitioners to testify. His testimony was limited to the fact that he has lived in Katonah, New York for 35 years and that while he often walks his dog past 84 Croton Lake Road, he has never seen Kennedy at the subject address. He testified that recently he noticed that the house was painted and the fence has been taken care of. He testified that there is rarely a car parked at the house, and that he lately "noticed that no one's been there a lot."

## 6. Robert F. Kennedy, Jr.

When questioned by petitioners, Kennedy admitted that he is currently a candidate for the public office of President of the United States. He also testified that he is running as a cadidate for the independent body named "We the People." He testified that Susan Peters signed the bottom of the Independent Nominating Petition. He also testified that the address on the petition is 84 Croton Lake Road. His testimony established that he married Cheryl Hines in 2014 and that she resides in California at 2975 Mandeville Canyon Road. He testified further that when he filed paperwork with the Federal Election Commission, he listed his address as 2975 Mandeville Canyon Road and electronically signed his signature.

With regard to his current ties to New York State, Kennedy testified that he has a Jeep registered in New York at his accountant's address, located at 217 West 18th Street, 1851, (not 84

10

[* 10]

Croton Lake Road). Kennedy also testified that he is licenced to practice law in the State of New York. Per Kennedy's testimony he owns real property in California and Massachusetts but not in New York. His testimony and a deed confirmed that he sold his property located in Bedford, NY in November 2012 and ultimately moved to California in 2014. He testified that it was after his marriage to Hines and that "one of us had to move." Kennedy then testified about various properties that the couple purchased and sold in California while living in that State. The testimony then turned to various pets Kennedy has had over the years, including a pet emu, turtles, 20 falcons and hawks, and three dogs. With the exception of the falcons and hawks, Kennedy testified that his pets moved with him to California in 2014. Kennedy also testified that the children who were younger than college age, moved to California with him. Kennedy then testified that his employee of more than 40 years, Wilbur Menendez, also moved with him to California along with some of Menendez's various family members. Per Kennedy's testimony Menendez travels with him to his Massachusetts property, but not to the 84 Croton Lake Road address.

With regard to work in California, Kennedy testified that he is of-counsel to the firm Howard & Street located in California. He then testified about various properties he purchased over the years while residing in California. Finally he testified that he purchased 2975 Mandeville Canyon Road in 2021 with Hines in California. Notably, Kennedy testified that some of his books are located at a storage facility in California. Kennedy testified that he pays the utility bills, tax bills and the mortgage expenses related to the Mandeville Canyon Road home along with Hines. Likewise, his testimony related to other homes purchased with Hines established they shared in paying those expenses.

With regard to Kennedy's home in Hyannis Port, Massachusetts, he testified that while he

11

lived at the property since 2008 under a lease arrangement, he exercised his purchase option on February 9, 2022. On the document transferring title, he listed his address at 2975 Mandeville Canyon Road, California. Kennedy also signed a power of attorney on January 29, 2022 and listed his address as 2975 Mandeville Canyon Road, California.

Next Kennedy was directed to testimony about his sister's residence located at 228 Chestnut Ridge Road in New York, where he testified that he lived for a period of six months or less before she sold the property on November 17, 2015. Kennedy's testimony and the admissible evidence revealed that Kennedy continued to utilize his sister's address for voting registration purposes even though she no longer owned the home and he no longer resided with her. Kennedy admitted that he continued to register his vote using the 228 Chestnut Ridge Road address in the 2016 primary and general elections. He explained that "I don't think it's illegal to vote - - I vote in the same town and I lived in the same town at the same voting place for 40 years."

Subsequent testimony by Kennedy establishes that for many years he utilized *2* Twin Lakes Drive as his address for purposes of his New York State voter registration. Notably Kennedy later testified that he never lived or spent time at *2* Twin Lakes Drive. Instead, Kennedy testified that he stayed at *1* Twin Lakes Drive. Nonetheless, Kennedy testified that he has not spent anytime at *1* Twin Lakes Drive since 2017 - the year he resigned from his positions at Pace University and Riverkeeper located in New York.

Next, Kennedy's testimony was directed to his March 10, 2017 resignation letter from certain positions at the New York organization known as Riverkeeper. In relevant part, the letter sets forth the following: "As you know, I now live on the west coast and the weekly commute has been hard on my family to say nothing of my carbon footprint." Next, Kennedy testified about his falconry

12

licenses in New York and California. Furthermore there was testimony regarding the date Kennedy registered his automobile to the 84 Croton Lake Road address. There was then testimony related to Kennedy's fishing licenses in the State of New York. Finally testimony returned to Mr. Kennedy's claims of residency at the 84 Croton Lake Road address which, according to Kennedy, began "sometime around May of 2023." Kennedy than confirmed that his pets do not reside at 84 Croton Lake Road nor do any of his family members.

Kennedy also testified that he left Pace in 2017 at the same time he resigned from New York based Riverkeeper and the NRDC. Kennedy's testimony then turned to registering his vehicle using a Twin Lakes "*Drive*" address instead of Twin Lakes "*Road.*" Kennedy then testified to a recent social media post where he discussed training ravens at his California residence. Kennedy was then directed to account for the number of times he slept at the 84 Croton Lake Road address and he responded "I only slept there once." When asked for details he stated, "About, I don't know, a month ago, three weeks ago." Then Kennedy was directed to a photo of the spare bedroom he claimed to be renting at the 84 Croton Lake Road address, he testified that none of the furniture or bedding was his. When directed to tell the Court regarding his intention to return to 84 Croton Lake Road, the following was stated on the record:

> Q. You testified before this Court, as you've sworn in affidavits, that it's your intent to return your family, your pets, maybe raven, to that spare bedroom in Mrs. Moss's house when you and Ms. Hines leave the State of California?
>
> A. I'm going to return to Bedford. And if that is convenient at the time, I would live there. It depends how many people come. I've lived with Tim before. It isn't a move the same way I did 13 other times in Bedford.
>
> Q. Understood Mr. Kennedy. So it's your testimony here today that you, your family, the pets, and all those wonderful things that establish some of the great things you've done in your

13

> life, may return actually to that spare bedroom in Ms. Moss'
> house?
>
> A.     It's possible.  If not, I'll find a house nearby.

Later on Kennedy testified that "it was a hardship" for him to move to California which he did.  He testified further that "I did gratefully out of love."

Next, Kennedy's testimony was directed to answering why he has been registering to vote at various places in New York State.  In particular when Kennedy was asked why he went to great lengths to obtain an New York State absentee ballot, he responded "because I did not want to change my voter registration to California because I'm a New Yorker." Next Kennedy testified regarding moving 13 times in Bedford over the years. In addition Kennedy was asked about the various places he receives mail other than the Croton Lake Road address, Kennedy testified that he receives mail at his two accountants - "some at Foxborough, Massachusetts; some mail in [his] home in Hyannis Port; some at [his] accountant in New York; some in Mandeville Canyon California." Next Kennedy testified that he pays income taxes in both New York State and California because he pays where he "receive[s] income."

When asked about the rent arrangement with Ms. Moss for the spare bedroom at the 84 Croton Lake Road address, Kennedy testified that at first he agreed to pay her $300 a month.  He then testified that "after the New York Post story broke I asked my assistant at that point to send her $500 a month because of the foreclosure." Kennedy then testified about how he selected his Vice President candidate who resides in California. Kennedy's testimony then was directed back to his time at 1 Twin Lakes Drive.  While he testified that he stopped residing there in 2023, he admitted that he had not spent any time there after calendar year 2017.  In addition when asked "you don't really have a

14

lot of physical attachment to 84 Croton Lake Road?," Kennedy responded "correct." When asked if he has a physical presence there, he responded, "no." Then when asked if he lives in California, Kennedy responded, "yes." When asked to use the dictionary definition of the word "fixed" to state whether he has a fixed presence in California, Kennedy responded, "to the extent that I am there a lot of my time, yes." Kennedy also testified that he became aware of the foreclosure proceeding at 84 Croton Lake Road from the New York Post. Petitioners rested.[2]

### IV. Respondent's Case:

#### 1. Barbara Moss

Moss testified that she purchased her residence located at 84 Croton Lake Road in Katonah, New York on August 1, 1991. The deed supporting her testimony was received into evidence. Moss testified that the structure located at 84 Croton Lake Road is a four-bedroom home approximately between 2200 and 2400 square feet on 4 and ½ acres. Moss also testified that she spends time in Dartmouth, Massachusetts where her husband owns a home. She testified that until recently her mother lived in Bedford and she was there to take care of her. Moss stated that her husband, D.Timothy Haydock, owns a home in Massachusetts. Her additional testimony was that she splits the time "pretty much half and half" between Massachusetts and New York.

With regard to her husband, D. Timothy Haydock, Moss testified that he has cognitive issues as a result of a medical problem beginning during COVID. She indicated that Haydock has "problems with language, aphasia and dementia and would be unable to give cogent testimony at the hearing." Moss testified that while she has been partners with Haydock for 29 years, they "only got

---

[2] Kennedy's counsel made an oral motion to dismiss the case at the close of petitioners' proof, which was denied by the Court.

married two years ago." When asked by Kennedy's attorney who was living at 84 Croton Lake Road in 2022, Moss responded "Tim and myself." With regard to interactions with Kennedy, Moss testified that she and her husband attended his wedding to Hines in 2014. Her testimony corroborated the testimony that Kennedy would spend time at the Twin Lakes home between 2014 and 2017.

With regard to Kennedy, Moss testified that she has known him since 1989 or 1990. She testified further that Haydock has known Kennedy since he was 17 or 18 years old. She testified that years ago when Kennedy and her husband were each separated from prior marriages, they rented a home together in 1993 or 1994. With regard to recent interactions in 2024, Moss testified that at some point two boxes of Kennedy's personal effects arrived at her Croton Lake residence. She then testified that she received a wire transfer to her checking account from Kennedy recently. She also testified that there was to be a written lease with Kennedy but that it was never executed. Moss then discussed photos that were taken in her home a few days before the trial that showed the spare bedroom that was set up for Kennedy to stay in. Additional photos were received into evidence which were photos of Kennedy's clothes in a closet and in a drawer. Moss' additional testimony established that there were pieces of unopened mail that had been sent to the residence along with mail received that Moss discusses with Kennedy's assistant. Notably, one piece of mail stipulated and received into evidence was from the Illinois Board of Election post marked July 11, 2024. Moss also testified that Kennedy has spent just one night in total at the 84 Croton Lake Road address, which was in the last week of June 2024.

On cross-examination, Moss testified she is the sole owner and mortgage holder at 84 Croton Lake Road. She testified that she pays the property taxes and the bills at the property along with her husband. She testified that her husband has been friends with Kennedy for almost 50 years with her

16

husband serving as best man at two of his weddings. Kennedy is the godfather to one of Haydock's daughters. Moss testified that members of the Kennedy family have come to the aid of her family in difficult situations including testifying during Kennedy's brother's trial in 2012. Moss also testified that her 84 Croton Lake Road property is subject to a foreclosure proceeding. She testified that while she has been provided with an attorney in this matter, she has no attorney representing her in the foreclosure action.

With regard to Kennedy making payments to Moss for use of the spare bedroom at the Croton Lake Road address, Moss testified that she received the first payment on May 20, 2024. The witness then testified on cross examination that the payment was received the very next day after a New York Post article about Kennedy. Notably, the New York Post article was stipulated and received into evidence by the Court but the Court ruled that its contents were inadmissible hearsay and would not be admitted for the truth of the matter. Moss then testified that two weeks later she received an additional $500.00. When asked "so it was Kennedy's idea on May 20th to send you $6,000," Moss answered, "somebody sent me $6,000, I don't know whose idea it was." Moss also testified that she worked with a lawyer for Kennedy in this proceeding. On cross-examination she also indicated that while Kennedy arranged to use a spare bedroom in her home in 2023, that the first payment she received was over a year later on the morning after the New York Post article was published. She also testified that she did not know where the two boxes that arrived at her home for Kennedy came from. Moss also testified that she "put things in the room when they arrived so they weren't in a box." She testified further that at some point she sent a key to her house to Kennedy's assistant but she is unsure if he received it. She testified that any mail that comes to her house, she mails to Kennedy's attorney or to his personal assistant in California. She testified that Hines has never stayed

17

[* 17]

at her home nor have any of Kennedy's various pets.

## 2. Robert F. Kennedy, Jr.

Respondent's direct questioning of Kennedy began with a video showing Kennedy's "younger self" and his ties to New York State. When asked if he considered himself a New Yorker, Kennedy responded in part:

> "I have every kind of affiliation with this state. My political gravities were in New York. I've been involved in politics for most of my adult life. I'm deeply involved in politics... But in the back of my head, at some point I may run for political office or my kids may run for political office and I want to keep my affiliations with New York State."

Then when asked by his counsel why he didn't rent an entire house or buy a house in Bedford NY, Kennedy responded:

> "Well home ownership is not just expensive, it's time consuming. And particularly in New York, you know, where – I was going to leave my car in New York and it snows a lot here and pipes break, the driveway needs to be plowed and, you know, all these other burdens that are associated with home ownership. And so for me it was much better to live with a friend."

Next Kennedy's attorney asked him questions related to his time at 1 Twin Lakes Drive and texts between he and Steiner in 2024 after the New York Post article was pusblished.

Next the testimony turned to questions about attorney Paul Rossi and certain advice he gave Kennedy regarding ballot access in his presidential campaign. Kennedy then proceeded to testify that he used New York as his residency in his nominating petitions "on advice of counsel." He further stated, "On advice of counsel..I believe that to be my only option at that time." He further testified that he did not use the 84 Croton Lake Road address in his nominating petition with the intent to

18

mislead voters in the State of New York. He then testified about his various ties to New York including work he has done for the environment during the Pataki administration. After that, Kennedy testified to the various places he lived after his father was assassinated in 1968. Next the testimony discussed Kennedy's falconry license in New York State. Kennedy then testified regarding the various jobs he had in New York State since graduating from the University of Virginia Law School. He testified about how he co-founded Hudson Riverkeeper and Waterkeeper Alliance, which he claims is the biggest water protection group in the world, and is based in New York. He then testified about his time working at Pace Law School and running an environmental litigation clinic. While he testified that he resigned from Hudson Riverkeeper and Pace in 2017, he testified that he remained involved with Waterkeeper "until the pandemic."

Turning to his Presidential campaign in the 50 states, Kennedy was asked if certain states required that he disclose the residence "where he was registered to vote," Kennedy answered "yes." Kennedy then stated that some states required that he list his domicile as " a state where [he] voted. And if [he] had any inconsistency across the 50 states [he] would have been sued and probably would have lost everything." Then when Kennedy was asked on re-direct if by signing a Statement of Candidacy and using his California address, whether he was making a statement on legal residency, Kennedy answered "No." Then Kennedy testified about having falconry licenses in NY State. He further testified that his falconry licensed had expired in California. He also testified how he sometimes mixes up the Twin Lakes Road address and refers to it as "*2*" instead of "*1*" and at times "*Drive*" instead of "*Road*." Then Kennedy testified that someone on his staff was supposed to change his driver's license. Later, certain emails were received into evidence to support this testimony. Kennedy then testified that his friends who had testified days earlier on behalf of petitioners may have

19

done so "because many of the positions that [he's] taken...running against [his] own Party have alienated [him] from many important and life-long relationships." At the close of his re-direct, Kennedy was asked by his attorney: "Have you intentionally maintained a continuous physical address in New York?," Kennedy answered, "yes."

### 3. Paul Rossi

Rossi testified that he graduated from Temple Law School in 1998. He testified about his employment following law school. He indicates that he is currently a solo practitioner. He also described a case where he represented the League of Women Voters and Common Cause in a constitutionality challenge. He also testified that his practice has been focused on "a lot of ballot access law challenges." Rossi then discussed various residency rules in other states that have been deemed unconstitutional for various reasons. Rossi then testified that he is an independent contractor for Team Kennedy. More specifically he testified, "I'm ballot access legal counsel. And they gave me the upgrade of Senior Ballot Access Legal Counsel." When asked if he has been paid, Rossi responded, "I have not asked to be paid yet" but indicated he would probably ask to be paid. He testified that he was engaged by Team Kennedy at the end of October 2023 "to put together a 50-state ballot access program so that the name Robert F. Kennedy, Jr. and whomever his Vice Presidential candidate would be would appear on the ballot in 2024." When asked if he needed to discuss legal residency with Kennedy, Rossi responded, "Absolutely. I mean one of the very first things you have to put on the very first documents are name and address. So, yes, I did." When Kennedy asked Rossi what constitutes residency and address, Rossi testified that the 12th Amendment establishes the standard of "inhabitancy", and that everybody can have just one domicile. Then when asked, to tell us the full extent of what he said to Kennedy regarding his legal

20

residency, Rossi responded in part as follows:

> I told him that the address that we needed was the address to which he intended to return after any kind of temporary or prolonged absence. And then the further conversation I had with him. What I told him is that it had to be the address to which he was registered to vote because certain states require you to swear that the address that you attested to is where you are registered to vote.

The witness later testified that he was relying on a case from the Northern District of Texas for his advice. Then when asked "after your interaction with Mr. Kennedy, did you conclude that his proper residency for his nominating petitions in the State of New York was his address in Katonah, New York?," Rossi responded as follows:

> Absolutely, because – look it was my understanding he has essentially three addresses: One in Massachusetts, which everyone is aware of, Hyannis Port, okay? His current domicile in New York. And the California address that his wife has and is maintaining until she retires. My analysis was based on the following. And I was the one who gave – I essentially was the one that said it's the 84 Croton Lake Road address which is your domicile under New York Law and under every other law. New York is the most restrictive domicile law in the country, so that's the rule I went with. It also comported with the 12th Amendment, which does apply here. It was my analysis based on he's a life-long New York resident, has maintained a domicile here his entire life, registered to vote here his entire life, he's always voted here his entire life, he is licensed to vote here, he is licensed to drive in New York, his professional licenses are in New York, his recreational licenses are in New York, he also pays taxes in New York. With all due respect, if I have advised him that either the Massachusetts or California address was the proper address to use, we would be in the same courtroom, the challenges would be made, and we would have a horrible case to defend. The only address that we could use on a 50-state basis is 84 Croton Lake Road, New York, in Katonah. And I told him that.

He then testified that he gave Kennedy this advice in November of 2023. This witness was then asked to testify about the constitutionality of New York State Election Law. At that time, the Court sustained petitioner's objection and limited Rossi to testimony to the scope of the Court's previous

21

ruling.

On cross-examination, Rossi testified that he is not admitted to practice law in the State of New York. When asked "is it possible that there's evidence and testimony and documents that maybe Mr. Kennedy did not share with you when you gave him advice [about residency]," Rossi answered at first, "that's a hypothetical." Then when asked "it's a possibility thought?", Rossi responded "I guess so."

### 4. John Dignan

John Dignan testified that he was appearing voluntarily and was not being paid for his testimony. He testified that he has known Kennedy for 40 years. He currently lives in Bedford, New York and owns a car service. He testified that he has been Kennedy's driver since 2003 or 2004. Dignan testified that in 2014 when Kennedy got married to Hines, he "used to come back weekly to be a professor at Pace Law School. I used to pick him up weekly." His testimony related to Kennedy's schedule in 2014 was similar to all the witnesses set forth above. He testified that in the last year he has seen Kennedy probably "four or five times." When asked, when did he last drive Kennedy, Dignan responded, "about a month ago...I picked him up at the [Hudson Yards Hotel]...in Manhattan." On cross-examination, Dignan testified that he had a very strong friendship with Kennedy and feels "loyalty" to him. Then when asked the questions "so you haven't driven him to 84 Croton Law Road in Katonah in the last few month at all?", Dignan responded "no." Respondents rested.

22

## VI. The Court's Ruling

Election Law§ 6-140 (1) requires that each page of an independent nominating petition set forth the address of the candidate's "place of residence" (Election Law§ 6-140 [1]). The Court of Appeals has repeatedly emphasized that although substantial compliance with Election Law requirements is acceptable as to details of form, "there must be strict compliance with statutory commands as to matters of prescribed content" (Matter of Hutson v Bass, 54 NY2d 772, 774 [1981]; see, Matter of Stoppenbach v Sweeney, 98 NY2d 431, 433 [2002]). The requirement that each page of a nominating petition set forth the candidate's "place of residence" is a matter of prescribed content, rather than form, and therefore strict compliance with the requirement is necessary (see, Matter of Stoppenbach v Sweeney, 98 NY2d at 433 [2002]; Matter of Hutson v Bass, 54 NY2d at 774 [1981]; Matter of Sheehan v Scaringe, 154 AD2d 832 [1989], appeal denied 74 NY2d 615 [1989]). Mandating strict compliance with the Election Law in this regard is designed to guarantee the integrity of the election process by facilitating the discovery of fraud and reducing the likelihood of unequal enforcement of the law (see, Seawright v Bd. of Elections in City of New York, 35 NY3d 227, 233 [2020]; Matter of Gross v Albany County Bd. of Elections, 3 NY3d 251, 258 [2004]). The strict compliance standard ensures that the Election Law is neutrally applied regardless of a candidate's history, background, party affiliation, protected class, "or any other criterion irrelevant to a determination of whether its requirements have been met" (Matter of Staber v Fidler, 65 NY2d 529, 534 [1985]). As cautioned by the Court of Appeals, "a too-liberal construction of the Election Law has the potential for inviting mischief on the part of candidates, or their supporters or aides, or worse still, manipulations of the entire election process" (Matter of Staber v Fidler, 65 NY2d at 534 [1985]; see, Matter of Gross v Albany County Bd. of Elections, 3 NY3d 251, 258 [2004]). Thus,

23

the failure to strictly comply with the Election Law requirements as to matters of content is fatal to a nominating petition (see, Matter of Gross v Albany County Bd. of Elections, 3 NY3d at 258 [2004]).

In view of the strict compliance standard, the Court's inquiry in this proceeding is not whether Kennedy substantially complied with the Election Law by listing the 84 Croton Lake Road address as his "place of residence' in the nominating petition. Nor does the Court's inquiry involve consideration of whether Kennedy's use of that address was intended to, or did in fact, mislead or confuse signatories to the petition. Rather, the strict compliance standard simply requires the Court to determine whether the 84 Croton Lake Road address was in fact Kennedy's legitimate "place of residence" under the Election Law at the time the nominating petition was circulated and filed with the Board of Elections (see, Matter of Pilla v Karnsomtob, 142 AD3d 1116, 1119 [2016], lv denied 28 NY3d 904; Zobel v New York State Bd. of Elections, 254 AD2d 520, 521 [1998]; Sheehan v Scaringe, 154 AD2d at 833 [1989], appeal denied 74 NY2d 615 [1989]). Here, petitioners contend that the nominating petition must be invalidated because the 84 Croton Lake Road address was not, and has never been, Kennedy's legitimate and bona fide "place of residence". Instead, petitioners argue, Kennedy falsely listed the 84 Croton Lake Road address as his residence on the nominating petition in order to perpetuate a decade-long "sham" that enabled him to retain his voting eligibility and political clout in the State of New York, while actually residing in the State of California.

Here, petitioners bore the burden at trial to demonstrate by clear and convincing evidence that the 84 Croton Lake Road address listed on Kennedy's nominating petition was not his residence within the meaning of the Election Law (see, Matter of Glickman v Laffin, 27 NY3d 810, 815 [2016]; Matter of Willis v Suffolk County Bd.of Elections, 54 AD3d 436 [2008], lv denied 11 NY3d

24

[* 24]

701 [2008]). The clear and convincing evidence standard requires the production of evidence which makes it "highly probable" that petitioners' claims are true, i.e., that Kennedy did not reside at the 84 Croton Lake Road address listed on the nominating petition (see, Matter of Ferreyra v Arroyo, 35 NY3d 127, 128 [2020]; Matter of Stavisky v Koo, 54 AD3d 432, 434 [2008]; Matter of Poldrugovaz, 50 AD3d 117, 127 [2008]). Election Law § 1–104 (22) defines "residence" as "that place where a person maintains a fixed, permanent, and principal home and to which he [or she], wherever temporarily located, always intends to return". As used in the Election Law, the term "residence" is synonymous with "domicile" and requires that a person be "physically present with the intent to remain for some time" (People v O'Hara, 96 NY2d 378, 384 [2001]; see, Matter of Palla v Suffolk County Bd. of Elections, 31 NY2d 36 [1972]; Matter of Fernandez v Monegro, 10 AD3d 429 [2004]). The controlling factor to a Court's finding that a party maintains a "residence" at a particular address "is that the individual must manifest an intent [to reside there], coupled with physical presence 'without any aura of sham'" (People v O'Hara, 96 NY2d 378, 385 [2001], quoting Matter of Gallagher v Dinkins, 41 AD2d 946, 947 [1973]). Notably, a generalized intent to return to a general geographic area at some uncertain point in the future is insufficient to constitute "residence" within the meaning of the Election Law (see, Matter of Stewart v Chautauqua Cnty. Bd. of Elections, 69 AD3d 1298, 1301 [2010], aff'd 14 NY3d 139 [2010]). Under the Election Law, "[a] person's residence is based largely on his intent to remain at or return to a specific abode", and must be coupled with an actual physical presence at that abode (Matter of Markowitz v Gumbs, 122 AD2d 906, 907 [1986], lv denied 68 NY2d 605 [1986]; see, Matter of Davis v Clennon, 227 AD3d 638, 639 [2024]). Residency is generally a factual question which is dependent upon the particular circumstances presented (see, Matter of Glickman v Laffin, 27 NY3d at 815 [2016]). Where the

25

[* 25]

determination of residence requires the resolution of conflicting testimony and credibility issues presented at trial, "the resolution of the conflict lies within the province of the trial court, as the finder of fact, and should not be disturbed on appeal unless 'it is obvious that the court's conclusion could not be reached under any fair interpretation of the evidence'" (Matter of Fernandez v Monegro, 10 AD3d at 430 [2004], quoting Matter of Markowitz v Gumbs, 122 AD2d at 907 [1986], lv denied 68 NY2d 605 [1986]).

Here, petitioners demonstrated by clear and convincing evidence that the 84 Croton Lake Road address listed on the nominating petition was not Kennedy's bona fide residence within the meaning of the Election Law. Despite Kennedy's claim that he resided in the spare bedroom of the home as Barbara Moss' tenant beginning in approximately the Spring of 2023, the overwhelming credible evidence introduced at trial established that Kennedy's connections with the 84 Croton Lake Road address existed only on paper and were maintained for the sole purpose of maintaining his voter registration and political standing in the State of New York. Kennedy's own testimony, as well as Moss' testimony, established that during the approximately 15 months that Kennedy claimed to be a tenant at the 84 Croton Lake Road address, he only slept there on one occasion. Moreover, that lone overnight stay at 84 Croton Lake Road did not occur until June 25, 2024, one month *after* Kennedy filed the nominating petition naming that address as his place of residence and two weeks after this proceeding challenging the nominating petition was commenced. Thus, during the period of May 3, 2024 through May 28, 2024 when the nominating petition was being circulated for signatures, Kennedy had not yet slept at the 84 Croton Lake Road address even once. While Kennedy attempted to blame his failure to sleep at the address on his busy campaign travel schedule and the lack of space for his security detail, this excuse is just further proof that Kennedy did not

26

intend to reside at the address. Furthermore, the Court deems it noteworthy that Kennedy was not campaigning for President during the period of 2018 and 2023 when he was using 1 Twin Lakes Road as his address and failed to even step foot in that residence.

Furthermore, the undisputed testimony provided by Moss and Kennedy established that there was no written lease for the premises and that, although they allegedly discussed a potential rental payment of $300 per month during their initial conversation in the Spring of 2023, Kennedy made no payments to Moss whatsoever until approximately one year later on May 20, 2024. Although Kennedy attempted to characterized that $6,000 payment to Moss as a "back payment" for one-year of rent, the credibility of this characterization is undermined by the testimony that Moss was not pressing Kennedy to make rental payments, that Kennedy made the payment one day after reading the May 19, 2024 New York Post article, that he told his assistant to send Moss $6,000 "because of the foreclosure", and that Kennedy was completely unaware that the home where he had supposedly been residing for an entire year was under foreclosure until he read about it in the New York Post. Indeed, Kennedy's admission that he was not named as a defendant in that foreclosure action, had never been contacted about the foreclosure or served with foreclosure papers, and was personally unaffected by the foreclosure action, supports the conclusion that he was not a legitimate tenant of the property. This credible evidence clearly established that Kennedy lacked the necessary intent to make the spare bedroom of the 84 Croton Lake Road address his legitimate and bona fide residence.

The undisputed testimony and evidence also established that Kennedy's physical presence at the 84 Croton Lake Road address was virtually nonexistent. Kennedy himself admitted that he does not have a physical presence at 84 Croton Lake Road, that he doesn't have much physical attachment to the property, that he lives in California and spends a lot of time at his residence there,

27

and that he has no current intention to abandon his California residence. Evidence regarding the scant number of his personal items kept in the spare bedroom at 84 Croton Lake Road further reinforces that Kennedy's physical presence at that address is nominal. The existence of minimal personal items consisting of some articles of clothing, a few books, and three photographs can hardly be considered a legitimate physical presence. Indeed, the Court finds it significant that Kennedy did not personally unpack the two boxes of his belongings that were sent to the address, was unable to provide an independent description of the three photographs, could not recall placing the photographs on the nightstand, and denied hanging the clothes that were in the closet. Kennedy's testimony that none of the furniture, bedding and other decorative items in the spare bedroom belonged to him, as well as his testimony that his wife and family, his extensive book collection, and his wide assortment of domestic and exotic pets all remained in California, was further compelling evidence that Kennedy lacks the necessary physical presence and intent to remain at the 84 Croton Lake Drive address to establish that address as his residence.

Kennedy's reliance upon evidence that he received certain items of mail at the 84 Croton Lake Road address is likewise insufficient to establish his physical presence and intent to return to that location. Moss' testimony that she did not retain the items of mail in anticipation of Kennedy's return to 84 Croton Lake Road, but that instead forwarded the mail to California and several other addresses at Kennedy's directive, only serves to strengthen the conclusion that Kennedy had no intention to return to that address to retrieve his mail. In addition, inasmuch as the items of mail entered into evidence were either related to Kennedy's Presidential campaign or appeared to be personal communications that had never been opened, the Court does not afford them great weight on the issue of residence. Moreover, as the testimony established that Kennedy receives mail at five

28

different addresses located in California, New York and Massachusetts, the fact that he receives campaign mail and seemingly unimportant personal mail at the 84 Croton Lake Road address holds little probative value.

To the extent that Kennedy attempted to demonstrate residence through proof that he maintains New York State fishing and falconry licenses, a New York State driver's license and vehicle registration, a New York State Voter registration, a law practice, and a license to practice law in New York State, none of this evidence is relevant to establishing that the 84 Croton Lake Road address that Kennedy listed on his nominating petition was his actual place of residence within the meaning of the Election Law. Kennedy's ability to drive, work and vote in this State, without proof of the requisite physical presence at a specific address where he intends to reside on a permanent basis, is immaterial. The Court reaches the same conclusion with respect to evidence relating to Kennedy's family history and past contributions to environmental and other worthy causes in this State. While no doubt admirable, Kennedy's accomplishments and family history from decades past have absolutely no bearing on the sole issue to be determined by this Court, i.e,. whether the 84 Croton Lake Road address listed on the nominating petition was Kennedy's bona fide residence within the meaning of the Election Law.

The clear and convincing evidence at trial also established that Kennedy lacked the requisite intent to return to 84 Croton Lake Road. Indeed, Kennedy himself testified that he lacked any present intent to return to the 84 Croton Lake Road address. While Kennedy testified that he intends to return to the State of New York when his wife retires from acting at some undefined date in the future, this testimony is speculative and wholly inadequate to establish a present intent to return to the spare bedroom of the 84 Croton Lake Road address. Given the size and appearance of the spare

29

bedroom as shown in the photographs admitted into evidence, the Court finds Kennedy's testimony that he may return to that bedroom to reside with his wife, family members, multiple pets, and all of his personal belongings to be highly improbable, if not preposterous. In addition, Kennedy's testimony that he would buy another house in the Town of Bedford if it is not "convenient" to move his family, pets, belongings into the spare bedroom at 84 Croton Lake Road is both speculative and immaterial to the issue of residence. The fact that Kennedy considers himself to be a "New Yorker", has fond memories of the years he lived in the Town of Bedford and longs to return there some day is utterly irrelevant to the issue of whether he resided in the spare bedroom of the 84 Croton Lake Road address during May of 2024 when he circulated and filed the nominating petition.

Based upon the clear and convincing credible evidence presented in this case, the Court finds that the 84 Croton Lake Road address listed on the nominating petition was not Kennedy's bona fide and legitimate residence, but merely a "sham" address that he assumed for the purpose of maintaining his voter registration and furthering his own political aspirations in this State. This conclusion is consistent with other evidence in the record demonstrating Kennedy's long-standing pattern of borrowing addresses from friends and relatives to use as placeholder addresses so he could maintain his voter registration in New York State while actually residing in California. Using a friend's address for political and voting purposes, while barely stepping foot on the premises, does not equate to residency under the Election Law. To hold otherwise would establish a dangerous precedent and open the door to the fraud and political mischief that the Election Law residency rules were designed to prevent.

The defenses and contrary arguments offered by Kennedy do not warrant a contrary result. First, to the extent that Kennedy claims a "dual residence" in California and New York and is

30

[* 30]

therefore entitled to list the New York address as his residence, this argument is without merit. While the Election Law does not preclude a person from having two residences and choosing one for election purposes, the residence chosen must be one to which the candidate has legitimate, significant, and continuing attachments such that it qualifies as a bona fide "residence" within the meaning of the Election Law (see, Maas v Gaebel, 129 AD3d 178, 180 [2015]; Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d 1088, 1089 [2008]). Inasmuch as the clear and convincing evidence demonstrates that the 84 Croton Lake Road address was not Kennedy's true residence, the dual residency argument must fail.

Kennedy's attempt to establish that he lacked the intent to mislead or confuse signatories because he listed the 84 Croton Lake Road address as his place of residence based upon the advice of legal counsel is also of no avail. According to this argument, because Kennedy lacked the intent to mislead or confuse signatories by using the 84 Croton Lake Road address, and because petitioners presented no evidence that any signatories were actually mislead or confused by his use of that address, invalidation of the petition is not required. However, the cases relied upon by Kennedy for the proposition that such a showing of intent or actual confusion is required, namely Ferris v Sadowski (45 NY2d 815 [1978]) and Maloney v Ulster County Bd. of Elecitons (21 AD3d 692 [2005]), are distinguishable. Both Ferris and Maloney concerned an inadvertent mistake that resulted in the use of the candidate's previous address on the petition. In each case, there was no dispute that the incorrect address had recently been the candidate's genuine and bona fide residence within the meaning of the Election Law. Notably, in excusing the mistake in Ferris, the Court of Appeals cautioned that its finding should not be interpreted as blanket rule permitting validation of a petition containing an incorrect address, as strict compliance with the Election Law would be

31

required in any case "where opportunities for deception or the likelihood of confusion would be present".

Here, unlike the candidates in Ferris and Maloney, Kennedy made the deliberate choice to use the 84 Croton Lake Road address as his "place of residence" on the nominating petition despite that fact that he never resided there. In this regard, this matter is identical to Eisenberg v Strasser (100 NY2d 590 [2003]), wherein the Court of Appeals invalidated a petition "because the candidate did not actually reside at the address he listed as his residence on the designating petition and which he had used for voter registration" (Eisenberg v Strasser , 100 NY2d at 591[2003]). Distinguishing the case from Ferris, wherein the candidate's former address was listed by mistake, the Court of Appeals found that invalidation of the petition was necessary because "in this case, the candidate decided to use an address that was not a true residence"(id.). While Kennedy attempts to deflect blame for his decision to use the 84 Croton Lake Road address upon Rossi's legal advice, the testimony demonstrated that the advice was not based upon Rossi's legal opinion that the 84 Croton Lake Road address was a valid residence under the New York State Election Law, but rather upon the need to use the address where Kennedy was registered to vote.

The Court will finally address Kennedy's contention that the Election Law residence requirement is unconstitutional under the 12th Amendment of the United States Constitution, as well as Kennedy's attempt to establish this contention through Rossi's trial testimony. Kennedy argues that the Election Law's residence requirement unconstitutionally imposes eligibility restrictions beyond those established by the 12th Amendment of the United States Constitution, which sets for the standard of "inhabitancy" rather than "residency". This argument is a red herring. Kennedy's designation of the 84 Croton Lake Road address as his "place of residence"was a false statement

32

[* 32]

requiring invalidation of the petition. The United States Constitution cannot be construed to protect candidates from making false statements on their petitions for public office. Moreover, to the extent that Kennedy attempted to establish his claim of unconstitutionality through Rossi's testimony, such testimony was properly excluded because Rossi was not disclosed or shown to be qualified as an expert in either Constitutional or New York State law, and admittedly was not licensed to practice law in the State of New York. In any event, even assuming that the testimony could be characterized as legal advice rather than expert testimony, any legal advice regarding the constitutionality of the New York State Election Law was nonetheless properly excluded as outside the scope of Kennedy's limited waiver of the attorney client privilege.

In view of the above testimony, evidence and findings, the nominating petition must be invalidated.

Therefore, it is

ORDERED AND ADJUDGED, that the petition is granted in its entirety, and it is further

ORDERED, ADJUDGED AND DECLARED that the nominating petition filed with Respondent New York State Board of Elections purporting to designate Respondent-Candidate, Robert F. Kennedy, Jr., as a candidate of the We The People Independent Body for Public Office of President of the United States, Respondent-Candidate Nicole Shanahan, as a candidate of the We The People Independent Body for Public Office of Vice President of the United States and Respondents Candidates individuals captioned therein as Electors for the General Election to be held on the 5th day of November, 2024 is invalidated, and it is further

ORDERED AND ADJUDGED that Respondent New York State Board of Elections is hereby directed not to place and/or print the name of the Respondents-Candidates aforesaid as

33

[* 33]

candidates of the We The People Independent Body on the official ballots to be used at the General Election to be held on the 5th day of November, 2024.

This constitutes the Decision and Judgment of the Court, the original which is being transmitted to the Albany County Clerk for electronic filing and entry. Upon such entry, counsel for petitioners shall promptly serve notice of entry on all other parties (see Uniform Rules for Trial Courts [22 NYCRR § 202.5-b [h][1], [2]).

Dated: August 13, 2024

HON. CHRISTINA L. RYBA
Supreme Court Justice

*Correction made to "Appearances" on page 1 to include Harris Beach, PLLC.*

34